# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RONALD MADDOX and
WILHEMINA MADDOX, his wife,

       Plaintiffs,

vs.

AETNA LIFE INSURANCE COMPANY, a
foreign corporation, DAIMLER CHRYSLER
CORPORATION, a foreign corporation,
BENEFIT EXPRESS, a subsidiary of DAIMLER
CHRYSLER CORPORATION, a
foreign corporation, and CATHY PANNELL,
an individual,

       Defendants.
_____/

Case No. 04-73478

HONORABLE NANCY G. EDMUNDS
HONORABLE STEVEN D. PEPE

## REPORT AND RECOMMENDATION

Plaintiff filed a complaint against Defendants in Oakland County Circuit Court concerning their rights as beneficiaries of a $17,325 Aetna life insurance policy from DailmerChrysler. Defendant Aetna removed the Action to this Court and filed a Counter-claim for impleader (Dkt. # 1, Dkt. # 5). Plaintiffs filed a Motion for Summary Judgment (Dkt. #30) asking the Court to find that a change of beneficiary was the result of undue influence and that the original beneficiaries should be reinstated. Defendant's argue that summary judgment is not appropriate in an Employment Retirement Income Security Act, 29 U.S.C. § 100 et. seq. (ERISA) case, and filed a Motion for Judgment based on the Administrative Record (Dkt. #29) asking the court to use the "arbitrary and capricious" standard of review, to determine who is entitled to the proceeds of the Policy. This matter was referred to the undersigned for a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**Facts:**

Plaintiffs are the son of the deceased beneficiary holder, Julian Maddox, and the son's wife. Plaintiffs, along with two other sons of Julian Maddox, were the named beneficiaries of the life insurance policy until approximately 17 days before his death. Cathy Pannell, who had been living with Julian Maddox for five or six months prior to his death, replaced them as the beneficiary of the insurance policy. The beneficiary change was effected by Julian Maddox and Cathy Pannell placing two phone calls to Benefit Express[1] from the Julian Maddox's hospital room.[2]

Plaintiff and his brother challenged the change to the policy by letter (Dkt. #29, Defendant's Motion for Judgment, Ex. H) and filed this action before a decision had been made as to the proper beneficiary. Aetna then decided not to make a decision and rather filed an interpleader action asking the Court for a ruling and order as to the proper life insurance beneficiary.

**Analysis:**

    **Plaintiffs' Motion for Summary Judgment:**

Plaintiffs argue that because ERISA does not contain any provision regulating the issue of beneficiary designations that are forged or the product of undue influence, federal common law must apply. The Sixth Circuit's decision in *Tinsley v. General Motors Corporation*, 227 F.

---

[1] Defendant DaimlerChrysler's Motion for Judgment based on the administrative record notes that Benefit Express is a separate corporate entity from DaimlerChrysler, and is now called Hewitt Associates. (Dkt. #29, Defendant's Motion for Judgment, p. 1, note 1).

[2] Benefit Express changed its procedures in February 2003, to allow oral changes to the designation of beneficiaries. (Dkt. #29. Defendant's Motion for Judgment, p. 9).

3d 700 (6th Cir. 2000), Plaintiffs argue, directs this Court to look to state law principles for guidance because federal common law is silent on dealing with forgery and undue influence in the designation of beneficiaries. (Id. at 704). The *Tinsley* Court determined that the following factors should be considered in determining whether or not a decedent is unduly influenced in making the change of their designated beneficiary: poor health of decedent at the time of the change; the change was made shortly before policy holder's death; the change benefitted a neighbor and not a blood relative; the relationship between the decedent and the new beneficiary was short in duration; and that the new beneficiary exerted some control over the decedant's finances (Id. at 705). Plaintiffs' brief highlights the similarities in the present case:

> Julian Maddox changed his beneficiary from his three (3) sons and daughter-in-law to Cathy Pannell, a non-family member, only 17 days before his death; Mr. Maddox was gravely ill at the time of the change of beneficiary; the telephone call's transcript indicates that Cathy Pannell was doing the overwhelming amount of the talking to the Benefits Express representative on July 25, 2004; Mr. Maddox was not in a position to make such a telephone call to the insurance company, nor could he write his name; Mr. Maddox had been living with Ms. Pannell for about three (3) months before the change of beneficiary was procured, and the decedent and Ms. Pannell had a twenty-eight (28) year age gap.

*Tinsley* is however distinguished from the present case because Tinsley involved the forged signature of a beneficiary designation form (Id. at 705). The Sixth Circuit limited the *Tinsley* ruling to the validity of the plan documents themselves in *Unicare Life & Health Ins. Co. v. Craig*, 157 Fed. Appx. 787 (6th Cir. 2005). In the case currently before the Court, the beneficiary change occurred during two phone calls to Benefit Express in which both Ms. Pannell and Mr. Maddox participated.

### Defendant's Motion for Judgment Based on the Administrative Record:

The Plan in question grants the Defendant Plan Administrator, with "full power and authority to administer the Life, Disability and Health Care Benefits Program and to interpret its

provisions, including, but not limited to, discretionary authority to determine eligibility for and entitlement to Program benefits, subject only to an arbitrary and capricious standard of review." (Dkt. 29, Defendant's Motion for Judgment, p. 2; Administrative Record, Exhibit B, p. 56).

Defendant DaimlerChrysler argues that they are obligated[3] to comply with the decedent's designation of Cathy Pannell as beneficiary because Mr. Maddox effectively designated her as beneficiary during two phone calls prior to his death. Defendant's brief explains that their position "is that the integrity of its procedures and the validity of its Plan and Policy language must be preserved, regardless of any sympathies or equities that might arise in favor of Plaintiffs." (Dkt. #29, Defendant's Motion for Judgement, p. 4). The *Unicare* Court explained that their decision not to enforce a desired intent of a deceased policy holder but instead uphold the actual designation that was made prior to death, "is governed, not by equity, but by the law of this circuit." *Unicare* at 792.

**Standard of Review:**

Before ruling on the parties' motions, the Court must decide which standard of review to apply. If this were a true ERISA case, the conflict would have arrived after the plan administrator had made a decision as to whom the benefits should be paid to. In that case, the Court would most certainly apply the "arbitrary and capricious" standard and would uphold the plan administrator's decision unless no reasonable fact finder could come to the conclusion which the plan administrator came to. However, because this was not a traditional appeal, and rather Plaintiff's brought this action before the administrator had made a decision, Plaintiff's have pointed to *Tinsley* suggesting that the Court has the ability to make a determination as to

---

[3] Defendant's look to Unicare, which says that the Court must look to the plans terms and not federal case law as Tinsley suggested. (Cite).

who should be the beneficiary.  Defendant DaimlerChrysler has argued that even without a final decision the Court still should review the plan using the arbitrary and capricious standard.  In essence, Defendant is asking for an anticipatory decision because the actions of Julian Maddox so clearly dictate a conclusion by the plan administrator that Ms. Pannell is the beneficiary that the Court should apply the arbitrary and capricious standard to the administrative record.  Both parties agreed at the January 13, 2006, hearing that if this case were to be remanded in order to have the plan administrator make a determination, the result would be that Cathy Pannell would be identified under the plan as the appropriate recipient of the insurance benefits.

Therefore, not with standing any sympathies for Plaintiffs, this Court must find for Defendant absent such clear evidence of fraud or undue influence that no reasonable fact finder could come to the conclusion that Cathy Pannell was the correct designated beneficiary.  Because both parties agree that if the Court compelled the plan administrator to make a determination, the plan administrator would name Cathy Pannell as the beneficiary, there is no reason to take this extra and unnecessary step to delay a determination.

Having examined the administrative record pursuant to the arbitrary and capricious standard, it is found that a designation of Cathy Pannell as the plan beneficiary in reliance on the Plan and Policy is not arbitrary nor capricious.

### Recommendation

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 20, 2006                                      s/Steven D. Pepe
Ann Arbor, Michigan                             United States Magistrate Judge

Certificate of Service

     I hereby certify that a copy of this Report and Recommendation was served upon the attorneys and/or parties of record by electronic means or U. S. Mail on April 20, 2006.

                                       s/William J. Barkholz
                                       Courtroom Deputy Clerk